UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————————

JOSHUA MUZUMALA,

      Plaintiff,                   22-cv-3789 (JGK)

      - against -           MEMORANDUM OPINION AND
                                      ORDER

FEDERAL BUREAU OF INVESTIGATION, ET
AL.,

      Defendants.

————————————————————————————

JOHN G. KOELTL, District Judge:

    This is a motion for summary judgment by the Federal Bureau of Investigation ("FBI") and Immigration and Customs Enforcement ("ICE") (collectively, the "Government") to dismiss Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 et seq., claims asserted by the plaintiff Joshua Muzumala against the FBI and ICE in a third amended complaint, ECF No. 15 ("TAC"). ECF No. 40. The Government also moves to dismiss Administrative Procedure Act ("APA"), 5 U.S.C. § 551 et seq., claims against ICE and a claim regarding "extreme surveillance" against the FBI and ICE. ECF No. 45. The plaintiff has cross-moved for summary judgment on the FOIA claims against the FBI and ICE, ECF No. 49, but does not oppose the Government's motion to dismiss, see Pl.'s Mem. of Law in Support of Mot. for Summ. J. 1, ECF No. 47 ("Pl.'s Mot."). Numerous other claims were already dismissed.

See ECF Nos. 11, 24; see also Second Am. Compl., ECF No. 9 ("SAC").

For the following reasons, the Government's motion to dismiss and motion for summary judgment are **granted**, and the plaintiff's cross-motion for summary judgment is **denied**.

## I.

The following facts are undisputed unless otherwise noted.[1]

### A. The Plaintiff's Allegations

The plaintiff identifies himself as a "male of African descent . . . who moved to the United States in 2006." TAC ¶ 5. The plaintiff alleges that, starting in September 2019 and at least through November 2021, he experienced "xenophobia and racial animus" and "harassment" and was "tracked, followed, and surveilled" in New Paltz, New York; Poughkeepsie, New York; Brooklyn, New York; and New Orleans, Louisiana. Id. ¶¶ 6-8, 11, 13-14, 20-21, 31-32. The reason for this treatment, the plaintiff alleges, was that the plaintiff's petition for lawful permanent residence was being processed by the United States Citizenship and Immigration Services (USCIS) around this time. Id. ¶ 9. In particular, the plaintiff alleges that certain neighbors and a federal law enforcement agent "harassed" and "tracked, followed, and surveilled" the plaintiff in all of the above-mentioned cities in an attempt to "arrest[] and deport[]"

---

[1] The Court does not rely on these facts in deciding the motion to dismiss.

the plaintiff or otherwise "run him out of the country." Id. ¶¶
7-14, 16, 21, 31-32.

### B. The Plaintiff's FOIA Request to USCIS

On January 19, 2022, the plaintiff submitted a FOIA request
to USCIS for records relating to: "1) Plaintiff's legal
permanent residence status, 2) removal records contained in
Plaintiff's file, and any other responsive records covering the
period September 2019 to January 2022." Id. ¶ 76. USCIS sent the
plaintiff a response on March 3, 2022, indicating that it had
identified 1,235 responsive records. See TAC, Ex. 15, ECF No.
15-1 at 47. Of those records, USCIS released 1,100 pages in
their entirety and 132 pages in part and withheld three pages in
their entirety. Id. On March 21, 2022, the plaintiff filed an
appeal with USCIS. Revised Decl. of Fernando Pineiro ¶ 8, ECF
No. 55 ("Pineiro Decl."). In response to the plaintiff's appeal,
USCIS identified thirty-four additional pages with redactions
that originated within ICE. Id. Of the thirty-four pages,
twenty-eight pages were subject to partial withholdings and one
page was withheld in full. Id. ¶ 34. The ICE FOIA Office
reviewed the ICE entries in the thirty-four pages related to the
plaintiff's FOIA request in USCIS's FIRST system. Id. ¶ 9. On
May 26, 2022, the ICE FOIA Office sent the plaintiff a letter
indicating that its withholdings were proper. TAC, Ex. 19, ECF
No. 15-1 at 59.

After the plaintiff filed this action, ICE re-processed the page that had been initially withheld in full and re-produced it with partial withholdings. The plaintiff's third amended complaint challenges the withholdings in the thirty-four-page production that originated from ICE. See TAC ¶¶ 158-63. On July 31, 2023, ICE, in accordance with Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), submitted a declaration and an attached index ("Vaughn index") describing the portions of records ICE withheld in response to the plaintiff's FOIA request and the bases for the withholdings. ECF No. 43-1. On October 9, 2023, ICE submitted a revised declaration with no changes to the Vaughn index. Pineiro Decl., Ex. 1, ECF No. 55-1; see also Pineiro Decl. ¶¶ 5, 31-33, 37.

### C. The Plaintiff's FOIA Request to the FBI

On February 1, 2022, the plaintiff submitted a FOIA request to the FBI for all records relating to him, including "[c]riminal records, including arrests and prosecutions" as well as, "for the period September 2019 to January 2022[,]" all "background checks initiated[,] . . . video and audio recordings[,] . . . warrants issued . . . " and "any and all records retrievable by [the plaintiff's] personal identifiers . . . ." Revised Decl. of Michael Seidel ("Seidel Decl."), Ex. A, ECF No. 54-1. By letter dated February 9, 2022, the Record/Information Dissemination Section of the FBI advised the

4

plaintiff that it had received his request but was unable to identify records responsive to the request. See Seidel Decl., Ex. B, ECF No. 54-2 ("Response Letter"). The Response Letter further noted that the identification records the plaintiff requested were maintained by the FBI's Criminal Justice Information Services ("CJIS") Division, so the request had been forwarded to CJIS. Id. The FBI sent the Response Letter to the address the plaintiff provided in his FOIA request. Compare id., with Seidel Decl., Ex. A. On February 27, 2022, CJIS sent the plaintiff a letter indicating that his request had been forwarded and advising him of the procedures for obtaining his identification record, including the requirement that fingerprints be provided in connection with the request. See Seidel Decl., Ex. C, ECF No. 54-3. This letter was also sent to the address the plaintiff provided in his FOIA request. Compare id., with Seidel Decl., Ex. A. CJIS did not receive a response from the plaintiff. Seidel Decl. ¶ 7, ECF No. 54.

On May 17, 2022, the FBI's Response Letter was returned with a stamped notice indicating that the Response Letter was "Not Deliverable As Addressed" and contained an "Insufficient Address." See id. ¶ 8; Seidel Decl., Ex. D, ECF No. 54-4. The United States Postal Service ("USPS") included a new forwarding address for the plaintiff. Id. On May 26, 2022, the FBI mailed a copy of the Response Letter to the new address provided by USPS.

See Seidel Decl. ¶ 9; Seidel Decl., Ex. E, ECF No. 54-5. On June
30, 2022, the FBI received the copy of the Response Letter back
with a stamped notice stating "Not Deliverable As Addressed" and
"Insufficient Address." See Seidel Decl. ¶ 10; Seidel Decl., Ex.
F, ECF No. 54-6. This time, no forwarding address was provided
by USPS. Id. On July 7, 2022, the FBI's Public Information
Officer e-mailed the plaintiff at the address he provided with
his FOIA request, see Seidel Decl., Ex. A, asking the plaintiff
to provide a current mailing address. See Seidel Decl., Ex. G,
ECF No. 54-7. The FBI did not receive a response. Seidel Decl. ¶
11. On February 28, 2023, after the plaintiff filed this action,
the FBI sent another copy of the Response Letter to the new
address the plaintiff provided when he filed his complaint. See
Seidel Decl., Ex. H, ECF No. 54-8.

### D. Procedural History

     The plaintiff brought this action on May 9, 2022, ECF No.
2, and filed an amended complaint on June 9, 2022, ECF No. 8.

     On June 13, 2022, the plaintiff filed a second amended
complaint, ECF No. 9, asserting fourteen claims, including FOIA
claims against the FBI and ICE and claims against DHS and ICE
under 42 U.S.C. § 2000ee-1, 6 U.S.C. § 345, and 28 U.S.C. §
2201. On July 22, 2022, the Court dismissed all claims except
for the plaintiff's FOIA claim against ICE and granted the

plaintiff leave to amend his FOIA claim against the FBI. ECF No. 11.

The plaintiff subsequently filed a third amended complaint, ECF No. 15, asserting fifteen claims, including FOIA claims against the FBI and ICE and APA claims against DHS and ICE. The plaintiff then filed a motion requesting that the Court "resume review" of the action with respect to DHS. ECF No. 23. On December 22, 2022, the Court denied the plaintiff's motion, finding that the plaintiff had merely "recast[]" his constitutional claims against DHS as APA claims and that, because DHS was no longer a party to the action, the plaintiff's request for review was moot. ECF No. 24.

As to the remaining six claims in the third amended complaint, the Government now moves to dismiss three non-FOIA claims -- Count XII (APA claim against ICE), TAC ¶¶ 151-57; Count XIV (APA claim against ICE), id. ¶¶ 164-68; and Count XV ("extreme surveillance" claim against the FBI and ICE), id. ¶¶ 169-83 -- and moves for summary judgment on the three remaining FOIA claims -- Counts I and II (FOIA claims against the FBI), id. ¶¶ 87-98, and Count XIII (FOIA claim against ICE), id. ¶¶ 158-63.

## II. Motion to Dismiss

### A. Standard of Review

The Government moves to dismiss the three remaining non-FOIA claims for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) or failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

To prevail against a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of proving the Court's jurisdiction by a preponderance of the evidence. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). In considering such a motion, the Court generally must accept the material factual allegations in the complaint as true. See J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004). However, the Court does not draw all reasonable inferences in the plaintiff's favor. Id. Indeed, where jurisdictional facts are disputed, the Court has the power and the obligation to consider matters outside the pleadings to determine whether jurisdiction exists. See Kamen v. Am. Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986). In so doing, the Court is guided by that body of decisional law that has developed under Rule 56. See id.

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must accept the allegations in the complaint as true and draw all reasonable inferences in the

8

plaintiff's favor. <u>McCarthy v. Dun & Bradstreet Corp.</u>, 482 F.3d
184, 191 (2d Cir. 2007). The Court's function on a motion to
dismiss is "not to weigh the evidence that might be presented at
a trial but merely to determine whether the complaint itself is
legally sufficient."[2] <u>Goldman v. Belden</u>, 754 F.2d 1059, 1067 (2d
Cir. 1985). To survive a motion to dismiss, the plaintiff's
complaint "must contain sufficient factual matter, accepted as
true, to state a claim for relief that is plausible on its face."
<u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). "A claim has facial
plausibility when the plaintiff pleads factual content that allows
the court to draw the reasonable inference that the defendant is
liable for the misconduct alleged." <u>Id.</u> While the Court should
construe the factual allegations in the light most favorable to
the plaintiff, "the tenet that a court must accept as true all
of the allegations contained in a complaint is inapplicable to
legal conclusions." <u>Id.</u>

## B. Discussion

The Government initially moves to dismiss Counts XII, XIV,
and XV of the plaintiff's third amended complaint. <u>See</u> Mem. of
Law in Support of Defs.' Mot. to Dismiss 1, ECF No. 46. The
plaintiff does "not challeng[e] the Government's motion to

---

[2] Unless otherwise noted, this Memorandum Opinion and Order omits all internal
alterations, citations, footnotes, and quotation marks in quoted text.

dismiss . . . . Pl.'s Mot. 1. The Court briefly addresses each
of the claims in turn.

Count XII of the plaintiff's third amended complaint should
be dismissed because the Court has already dismissed this claim.
"[W]hen a court decides upon a rule of law, that decision should
continue to govern the same issues in subsequent stages in the
same case." Carroll v. Trump, No. 20-cv-7311, 2023 WL 5017230,
at *8 (S.D.N.Y. Aug. 7, 2023) (citing Pepper v. United States,
562 U.S. 476, 506 (2011)) (rejecting affirmative defenses that
were previously considered and rejected by the court). Count XII
of the third amended complaint ("Ongoing controversy where
Plaintiff continues to be tracked, followed, and surveilled
under the premise of removal, when Plaintiff's USCIS FOIA
Request revealed no removal records") is essentially identical
to Count XII of the second amended complaint. Compare TAC ¶¶
151-57, with SAC ¶¶ 155-61. The Court dismissed Count XII of the
second amended complaint, finding that "the Declaratory Judgment
Act, 28 U.S.C. § 2201, on which the Plaintiff . . . relies, does
not afford an independent basis for relief[,]" and, moreover,
"[t]he doctrine of sovereign immunity . . . bars the Plaintiff
from pursuing constitutional claims under Bivens against the
named federal agencies or the named individuals in their
official capacities." Muzumala v. Mayorkas, No. 22-cv-3789, 2022
WL 2916610, at *4 (S.D.N.Y. July 22, 2022). The fact that the

plaintiff now asserts the claim under the APA rather than the
Declaratory Judgment Act, see TAC ¶¶ 155-57, does not save the
plaintiff's claim. The Court found that "the plaintiff's
recasting of his claims . . . as alleged violations of the
Administrative Procedure Act, 5 U.S.C. § 702, does not alter the
analysis" regarding "sovereign immunity." Muzumala v. Fed.
Bureau of Investigation, No. 22-cv-3789, 2022 WL 20088073, at *1
(S.D.N.Y. Dec. 23, 2022).

Count XV of the plaintiff's third amended complaint should
also be dismissed for the same reason. Count XV of the third
amended complaint ("Extreme surveillance that is more than just
surveillance") was already pleaded and dismissed as Count XIV of
the second amended complaint. Compare TAC ¶¶ 169-83, with SAC ¶¶
177-91. The Court dismissed Count XIV of the second amended
complaint because "sovereign immunity . . . bars the Plaintiff
from pursuing constitutional claims under Bivens against the
named federal agencies or the named individuals in their
official capacities." Muzumala, 2022 WL 2916610, at *4.

Finally, Count XIV of the plaintiff's third amended
complaint should be dismissed because it is duplicative of Count
XIII, namely the plaintiff's FOIA claim against ICE, and
judicial review is not available for Count XIV. "Judicial review
under the APA is limited to agency actions for which there is no
other adequate remedy in a court." Pereira v. United States

11

Dep't of Just., No. 16-cv-2599, 2016 WL 2745850, at *13 (S.D.N.Y. May 11, 2016) (quoting 5 U.S.C. § 704). Therefore, "[w]hen another statutory vehicle provides an adequate remedy in a court, claims brought under the APA are properly dismissed." Id. (collecting cases). "An alternative avenue for relief is considered an adequate remedy if it offers the same relief the plaintiffs seek under the APA." Panjiva, Inc. v. United States Customs & Border Prot., 342 F. Supp. 3d 481, 495 (S.D.N.Y. 2018), aff'd, 975 F.3d 171 (2d Cir. 2020). If a plaintiff "invokes the APA as an alternative to obtain the disclosure of the . . . information sought in . . . FOIA requests, . . . [the] FOIA constitutes an adequate substitute remedy." Id. In this case, the plaintiff, like the plaintiff in Panjiva, invokes the APA as an alternative means to obtain the disclosure of the information he sought in his FOIA request. In Count XIV, the "[p]laintiff seeks injunctive relief from the Court to compel Defendant ICE to release . . . information exempted from disclosure, to ascertain the presence or absence of removal records in Plaintiff's file" under the APA -- the same relief sought in Count XIII under the FOIA. Compare TAC ¶ 162 (citing 5 U.S.C. § 702), with TAC ¶ 168 (citing 5 U.S.C. § 552(a)(4)(B)).

Accordingly, the Government's motion to dismiss Counts XII, XIV, and XV of the plaintiff's third amended complaint is **granted.**

12

### III. Motions for Summary Judgment

#### A. Standard of Review

The standard for granting summary judgment is well established. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224. The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable

inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)); see also Gallo, 22 F.3d at 1223. Summary judgment is improper if any evidence in the record from any source would enable a reasonable inference to be drawn in favor of the nonmoving party. See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994). If the moving party meets its burden, the nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993).

"[T]he general rule in this Circuit is that in FOIA actions, agency affidavits alone will support a grant of summary judgment." Ferguson v. Fed. Bureau of Investigation, No. 89-cv-5071, 1995 WL 329307, at *2 (S.D.N.Y. June 1, 1995) (citing Carney v. U.S. Dep't of Justice, 19 F.3d 807, 812 (2d Cir. 1994)), aff'd, 83 F.3d 41 (2d Cir. 1996). "Affidavits submitted by an agency are accorded a presumption of good faith . . . ." Carney, 19 F.3d at 812.

### B. Discussion

The Government moves for summary judgment on the remaining claims -- namely the FOIA claims against the FBI (Counts I and II) and ICE (Count XIII). See Defs.' Mem. of Law in Support of

14

Mot. for Summ. J. 7, ECF No. 41. The plaintiff opposes the Government's motion and cross-moves for summary judgment. See Pl.'s Mot. 1. The Court addresses each of the claims in turn.

### i. Count I

The plaintiff asserts that the FBI "failed to respond to the [FOIA] Request within the statutorily mandated timeframe, in violation of Plaintiff's rights under the FOIA, including but not limited to 5 U.S.C. § 552(a)(6)(A)(i) and (a)(6)(B)." TAC ¶ 89. The Government argues that, to the contrary, "the FBI responded to Plaintiff's FOIA request within the statutorily permitted time frame." Defs.' Reply Mem. of Law 2, ECF No. 53 ("Defs.' Reply").

The FOIA provides that an agency "shall determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of [a FOIA] request whether to comply with such request and shall immediately notify the person making such request . . . ." 5 U.S.C. § 552(a)(6)(A)(i). In this case, the FBI responded within the time allowed by the statute. The FBI responded to the plaintiff's FOIA request on February 9, 2022, see Seidel Decl., Ex. B, six business days after the plaintiff made the request on February 1, 2022, see Seidel Decl., Ex. A. The FBI sent its response to the address that the plaintiff

provided at the time of his request, <u>compare</u> <u>id.</u>, <u>with</u> Seidel
Decl., Ex. B.[3] The plaintiff does not dispute these facts.

The plaintiff argues that the FBI nevertheless failed to
respond timely to the FOIA request because the FBI did not send
its response to the plaintiff by email. <u>See</u> Pl.'s Mot. 10-14. In
asserting this argument, the plaintiff relies on the subsection
of the FOIA that provides: "In making any record available to a
person under this paragraph, an agency shall provide the record
in any form or format requested by the person if the record is
readily reproducible by the agency in that form or format." 5
U.S.C. § 552(a)(3)(B). However, as the Government correctly
argues, that subsection pertains to how the agency produces
records, not to how the agency responds to FOIA requests in the
first instance. <u>See</u> Defs.' Reply 3 n.1. Nowhere does the statute
specify that the agency must provide a response in the same
manner that the FOIA request was made, as the plaintiff
contends.[4]

---

[3] The FBI also made reasonable efforts to ensure the plaintiff received the
response letter. When the response letter was returned as not deliverable,
the FBI sent the letter to the forwarding address provided by the United
States Postal Service ("USPS"). <u>See</u> Seidel Decl. ¶¶ 8-9, ECF No. 54; Seidel
Decl., Exs. D, E, ECF Nos. 54-4, 54-5. That letter was also returned as not
deliverable, without another forwarding address. <u>See</u> Seidel Decl. ¶ 10;
Seidel Decl., Ex. F, ECF No. 54-6.
[4] The FBI did, in fact, send the plaintiff an email response. On July 7, 2022,
the FBI's Public Information Officer sent the plaintiff an email at the email
address the plaintiff provided, <u>see</u> Seidel Decl., Ex. A, ECF No. 54-1, asking
the plaintiff to provide a current mailing address. <u>See</u> Seidel Decl., Ex. G,
ECF No. 54-7. The FBI did not receive a response. Seidel Decl. ¶ 11.

Accordingly, the FBI timely responded to the plaintiff's FOIA request.

### ii. Count II

The plaintiff also argues that the FBI "failed to make reasonable timely efforts to search for records responsive to the [FOIA] Request." TAC ¶ 97. The Government argues that "the FBI conducted an adequate search for responsive records." Defs.' Reply 4.

The adequacy of an agency's search is "measured by the reasonableness of the effort in light of the specific request." Whitaker v. Dep't of Commerce, 970 F.3d 200, 206 (2d Cir. 2020). To respond "adequately," an agency must show that "it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." Id. at 206-07; see also Grand Cent. P'ship, Inc. v. Cuomo, 166 F.3d 473, 489 (2d Cir. 1999) (holding that the FOIA requires an agency to demonstrate that "the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant"). "This standard does not demand perfection, and thus failure to return all responsive documents is not necessarily inconsistent with reasonableness . . . ." Adamowicz v. IRS, 552 F. Supp. 2d 355, 361 (S.D.N.Y. 2008); Amnesty Int'l USA v. CIA, No. 07-cv-5435, 2008 WL 2519908, at *11 (S.D.N.Y. June 19, 2008) (The "FOIA does

17

not demand a search that would be futile."). The reasonableness of a search may be "established solely on the basis of the Government's relatively detailed, non-conclusory affidavits that are submitted in good faith." Adamowicz, 552 F. Supp. 2d at 361. A declaration in support of the reasonableness of a search should explain "the type of search performed, and aver[] that all files likely to contain responsive materials were searched." Iturralde v. Comptroller of Currency, 315 F.3d 311, 313-14 (D.C. Cir. 2003). However, such declaration "need not set forth with meticulous documentation the details of an epic search." Gonzalez v. United States Citizenship & Immigr. Servs., 475 F. Supp. 3d 334, 347 (S.D.N.Y. 2020).

In this case, the Seidel Declaration demonstrates that the FBI fulfilled its FOIA obligations because it "searched the record systems, or caused the records systems to be searched, where it believed responsive records were likely to be located." Conti v. Dep't of Homeland Sec., No. 12-cv-5827, 2014 WL 1274517, at *11 (S.D.N.Y. Mar. 24, 2014). Michael Seidel is the Section Chief of the Record/Information Dissemination Section, Information Management Division of the FBI, since July 2020 and has worked at the FBI since September 2011. See Seidel Decl. ¶ 1. The Seidel Declaration provided a detailed description of the FBI's Central Record System as well as Sentinel, the FBI's case management system. See id. ¶¶ 14-20. Additionally, the Seidel

Declaration described why "a search of the CRS automated indices, available within Sentinel via the Sentinel and ACS search functions in Sentinel represented the most reasonable means for the FBI to locate records potentially responsive to [the plaintiff's] [FOIA and Privacy Act] request." Id. ¶ 21. Finally, the Seidel Declaration detailed the search for records potentially responsive to the plaintiff's request and reported that the search returned no results. Id. ¶¶ 22, 28.

The plaintiff argues that the FBI failed to conduct an adequate search because Seidel's original declaration, ECF No. 42, indicates that the FBI conducted the search under the wrong name -- "Joseph Muzumala" rather than "Joshua Muzumala." See Pl.'s Mot. 22-23. However, the FBI submitted a revised affidavit that declared the search was conducted under the correct name and the original affidavit simply contained a mistaken description of the name that was used. See Seidel Decl. ¶ 4 n.1. Furthermore, there is no reason to believe that the revised affidavit is false and that the search was conducted under the wrong name. Indeed, the exhibits to the original declaration contain the correct name, see, e.g., ECF No. 42-2, and support the conclusion that the incorrect name contained in the original declaration was a typographical error. Courts have accepted corrections such as the one in this case and found that an agency "confess[ing] to a mistake in its initial declaration and

19

then correct[ing] that mistake does not render the search inadequate" or amount to a showing of bad faith. Natural Resources Defense Council, Inc. v. Wright-Patterson Air Force Base, No. 10-cv-3400, 2011 WL 3367747, at *6 (S.D.N.Y. Aug. 3, 2011).

The plaintiff does not provide any evidence that the FBI has records relating to him and are withholding those records. Accordingly, the FBI conducted an adequate search and properly explained that there were no records responsive to the plaintiff's FOIA request.

### iii. Count XIII

Additionally, the plaintiff argues that ICE failed to "disclos[e] . . . withheld information . . . ." TAC ¶¶ 158-63. The Government responds that "ICE conducted an adequate search for responsive materials even though Plaintiff did not submit a FOIA request directly to ICE[,]" and "ICE properly withheld information in USCIS's production pursuant to FOIA Exemptions 3, 6, 7(C), and 7(E), and properly segregated releasable portions of the redacted records." Defs.' Reply 6.

To the extent that the plaintiff argues that ICE's searches were inadequate, that is not true. An agency conducts an adequate search if it "ma[kes] a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."

Whitaker, 970 F.3d at 206-07. Reasonableness may be "established solely on the basis of the Government's relatively detailed, non-conclusory affidavits that are submitted in good faith[,]" Adamowicz, 552 F. Supp. 2d at 361, that explain "the type of search performed, and aver[] that all files likely to contain responsive materials were searched." Iturralde, 315 F.3d at 313-14. In this case, the Pineiro Declaration demonstrates that ICE fulfilled its obligations under the FOIA. In response to the plaintiff's initial FOIA request directed to USCIS, ICE received and reviewed the request from USCIS and notified the plaintiff that the withholdings in the thirty-four-page production were proper. Pineiro Decl. ¶¶ 8-10. Then, in response to this action, ICE determined that certain program offices within ICE may have records relating to the plaintiff's FOIA request and tasked the program offices with conducting additional searches for responsive documents. Id. ¶¶ 11-12. One of the program offices located an Excel spreadsheet that was responsive -- in addition to locating the original thirty-four pages provided to the plaintiff -- and produced the spreadsheet to the plaintiff without redactions on October 4, 2023. Id. ¶¶ 12, 26, 36. The Pineiro Declaration specifies the specific program offices and search terms that were involved in this search. Id. ¶¶ 23-30. The fact that an agency conducts an additional search does not support a finding of bad faith or undermine adequacy, even if

the search reveals previously omitted documents. See Mitchell v. U.S. Dep't of Veterans Affairs, No. 18-cv-2672, 2021 WL 5180261, at *7 (S.D.N.Y. Nov. 8, 2021); see also Natural Resources Defense Council, 2011 WL 3367747, at *6. Accordingly, ICE's searches in this case were adequate.

To the extent that the plaintiff argues that ICE improperly withheld information under the FOIA's exemptions, that argument also fails. ICE properly withheld information in the plaintiff's FOIA request under Exemptions 3, 7(E), 6, and 7(C). FOIA Exemption 3 authorizes agencies to withhold records "specifically exempted from disclosure by statute" -- in this case, 49 U.S.C. § 114(r), which relates to nondisclosure of security activities -- if that statute either (1) "requires that the matters to be withheld from the public in such a manner as to leave no discretion on the issue," or (2) "establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 522(b)(3). Exemption 7(E) exempts from disclosure "[r]ecords or information compiled for law enforcement purposes, but only to the extent" that their production "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." Id. § 552(b)(7)(E). Exemption 6

protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." Id. § 552(b)(6). Finally, Exemption 7(C) protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." Id. § 552(b)(7)(C).

The plaintiff does not dispute that ICE's redactions pursuant to FOIA Exemptions 3 and 7(E) were proper. See Pl.'s Mot. 30-31. Rather, the plaintiff claims that the difference in the amount of redactions between pages 29 and 32 proves that non-exempt information was improperly withheld. See id. 30; see also Muzumala Decl., Exs. B1-B2, ECF No. 59. However, the alleged non-exempt information at issue is not actionable. Assuming the plaintiff is correct that pages 29 and 32 contain identical information, what was erroneously redacted on page 32 are column headers that read "Organization," "Full Name," and "Telephone." The plaintiff was not deprived of the non-exempt information. The plaintiff knows what the column headers are because that information is not redacted on page 29.

The plaintiff also argues that ICE improperly applied Exemption 6 to pages 29 and 34 because ICE applied both

Exemptions 6 and 7(C) to pages 29 and 34 but only Exemption 7(C)[5]
to the same redacted information on page 32. See Pl.'s Mot. 30.
The Government appears to concede that ICE made typographical
errors, failing to include Exemption 6 on page 32 and citing
Exemption 7(E) rather than 7(C) on page 32. See Defs.' Reply 10;
see also Muzumala Decl., Exs. B1-B3. However, this does not
change the fact that the information was properly withheld under
Exemption 7(C), which the plaintiff does not contest. See Pl.'s
Mot. 30.

Additionally, the plaintiff argues that ICE's Vaughn index
was inadequate. The Court of Appeals for the Second Circuit has
"eschewed rigid adherence to any particular indexing format
under the Vaughn standard, opting instead for a functional
approach." Halpern v. F.B.I., 181 F.3d 279, 291 (2d Cir. 1999).
Courts in this Circuit have found Vaughn indices to be adequate
where they "identif[y] each document where information was
redacted, the type of document it is, the claimed exemption and
the basis for redacting the information pursuant to that
exemption." Vietnam Veterans of America Connecticut Greater
Hartford Chapter 120 v. U.S. Dep't of Homeland Sec., 8 F. Supp.
3d 188, 229 (D. Conn. 2014). All of that information is included

---

[5] The plaintiff mistakenly cites Exemption 7(C) rather than Exemption 7(E).
See Muzumala Decl., Ex. B2, ECF No. 59

in the Vaughn index that ICE submitted in this case. See Pineiro
Decl., Ex. 1. Accordingly, ICE's Vaughn index was adequate.

In summary, the Government's motion for summary judgment
dismissing Counts I, II, and XIII of the plaintiff's third
amended complaint is **granted**, and the plaintiff's motion for
summary judgment is **denied.**

### iv. Attorney's Fees

Finally, the plaintiff claims that he has substantially
prevailed and is therefore entitled to attorney's fees. See
Pl.'s Mot. 34. The Government disagrees. See Defs.' Reply 12.

Pursuant to the FOIA, courts "may assess against the United
States reasonable attorney fees and other litigation costs
reasonably incurred in any case . . . in which the complainant
has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i).
However, the Court of Appeals for the Second Circuit has held
that pro se litigants are not eligible for prevailing party
attorney's fees under the FOIA. See, e.g., Warren v. Colvin, 744
F.3d 841, 845 n.5 (2d Cir. 2014); Kuzma v. U.S. Postal Serv.,
725 F.2d 16, 17 (2d Cir. 1984) (per curiam). Thus, the plaintiff
in this case, who appears pro se, is not eligible for attorney's
fees.

Moreover, the plaintiff in this case has not "substantially
prevailed." Rather, the plaintiff has failed to produce any non-
trivial benefit to himself or to the public. The plaintiff's

25

efforts have resulted in no additional documents from the FBI and just one additional document (and removal of some redactions on another document) from ICE. Most of the plaintiff's claims have been dismissed without the production of any additional information.

Accordingly, the plaintiff is not entitled to attorney's fees.

### CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the foregoing reasons, the Government's motion to dismiss and motion for summary judgment are **granted.** The plaintiff's cross-motion for summary judgment is **denied.** The Clerk is directed to enter judgment dismissing this case. The Clerk is also directed to close all pending motions.

**SO ORDERED.**

Dated:    New York, New York
          December 20, 2023

_____
        John G. Koeltl
**United States District Judge**